Opinion filed June 7, 2007
















 
 
  
 
 







 
 
  
 
 




Opinion filed June 7, 2007

 

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh Court of Appeals

                                                                   __________

 

                                                          No. 11-06-00235-CR

                                                    __________

 

                             WAYNE
DALE WAGNER, JR., Appellant

 

                                                             V.

 

                                        STATE
OF TEXAS,
Appellee

 



 

                                         On
Appeal from the 385th District Court

 

                                                        Midland County, Texas

 

                                                 Trial
Court Cause No. CR30704

 



 

                                                                   O
P I N I O N

The jury
convicted Wayne Dale Wagner, Jr. of the offense of aggravated sexual
assault of a child younger than fourteen years of age.  See Tex.
Pen. Code Ann. '
22.021 (Vernon
Supp. 2006).  The jury assessed appellant=s punishment at confinement for
life.  We affirm.

                                                                    Background








The child, T.A.L., was born on February 20,
1994.  Appellant and T.A.L.=s mother, Delta Livesay, began a
relationship in 1998.  Appellant and
Delta moved into an apartment together, and T.A.L. lived with them.  Appellant and Delta lived together, off and
on, from November 1998 until May 2003, at a number of different
residences.  In 2000, Delta and appellant
had a child (T.W.) together.  During her
testimony, Delta said that appellant verbally, mentally, and physically abused
her during the course of their relationship. 
Delta left appellant a number of times but would later return to live
with him.   During part of the time that
Delta lived away from appellant, T.A.L. and T.W. lived with appellant.  In May 2003, Delta took T.A.L. and T.W. and
left Texas.  They stayed in Omaha,
Nebraska, for about two weeks and then moved
in with Delta=s mother
in Cameron, Missouri.

In the latter part of 2004, T.A.L. made an outcry
statement to Delta.  T.A.L. told Delta
about a number of things that appellant had done to her, including having
sexual intercourse with her.  Appellant
was later indicted for aggravated sexual assault of T.A.L.  The indictment alleged that appellant, on or
about March 15, 2003, Aintentionally
and knowingly cause[d] the penetration of the female sexual organ of [T.A.L.]
by the sexual organ of the said [appellant].@

The State designated Delta as the outcry witness,
and Delta testified as the outcry witness at trial.  T.A.L. also testified at trial.  She said that, during her third grade year,
appellant had put his penis into her private part on a number of different occasions.  During her testimony, T.A.L. described the
sexual intercourse in detail.  The State
also presented testimony from Cori Armstead, a sexual assault nurse examiner
who had examined T.A.L.  Armstead
testified that her findings supported T.A.L.=s
outcry of sexual assault.

                                                                 Issues
Presented

Appellant presents six points of error for
review.  In his first point, appellant
asserts that the trial court erred in permitting Delta to testify as the outcry
witness because she was not the proper outcry witness.  In his second point, appellant challenges the
legal and factual sufficiency of the evidence to support his conviction.  In his third point, appellant contends that
the trial court erred by disallowing his attempt to impeach Delta with a prior
inconsistent statement about her substance abuse.  In his fourth, fifth, and sixth points,
appellant complains that the State made improper comments during jury arguments
in the guilt/innocence phase and in the punishment phase.

                                                              Outcry
Witness Issue








Appellant asserts that Monica Kim Gomez was the
proper outcry witness and that, therefore, the trial court erred in permitting
Delta to testify as the outcry witness.  Tex. Code Crim. Proc. Ann. art. 38.072
(Vernon 2005) governs the admissibility of outcry statements.  It provides that certain hearsay testimony is
admissible in the prosecution of offenses committed against children twelve
years of age or younger.  The proper
outcry witness is the first person, eighteen years of age or older, other than
the defendant, to whom the child victim made a statement about the offense in
some discernible manner.  See
Article 38.072, section 2(a)(2); see also Smith v. State, 131
S.W.3d 928 930-31 (Tex. AppCEastland
2004, pet. ref=d).  A trial court has broad discretion in
determining the admissibility of proper outcry evidence, and its determination
as to the proper outcry witness will not be disturbed absent a showing in the
record that the trial court clearly abused its discretion.  Garcia v. State, 792 S.W.2d 88, 92
(Tex. Crim. App. 1990).

More than six months before trial, the State
notified appellant=s counsel
by letter of its intention to introduce into evidence T.A.L.=s outcry statement to Delta.  The State=s
letter indicated that T.A.L. had told Delta that A[appellant]
had been molesting her since she was eight years old and that, when she turned
nine, he had started touching her vagina and had forced her to have sexual
intercourse with him.@  Delta testified as the outcry witness at
trial without objection by appellant. 

            Later, the State presented Midland Police Detective Kay
Therwanger, the investigating officer in this case, as a witness.  Detective Therwanger testified that, because
Delta and T.A.L. no longer lived in Midland, she
contacted Detective Rick Basher, a police officer in Missouri, for assistance in interviewing
T.A.L.  Detective Therwanger also asked
Detective Basher to obtain a statement from Delta.  Detective Therwanger took a statement from
Monica Gomez.  Although Detective
Therwanger did not interview Delta, she did speak with Delta on the phone.  Delta said that, because T.A.L. was having
difficulty telling her the details about what had happened, Delta called Gomez
so that T.A.L. could talk with Gomez, a family friend.  Thus, Detective Therwanger testified that
Gomez was the first person over the age of eighteen years to whom T.A.L. made a
complete statement about the offense. 
Detective Therwanger identified Gomez as Asort
of an original outcry witness for [T.A.L.].@








Based on Detective Therwanger=s testimony, appellant=s counsel moved for a mistrial on the
ground that Delta was not the proper outcry witness.  The trial court excused the jury to permit
the parties to explore the issue.  During
questioning from the trial court, Detective Therwanger agreed that T.A.L. first
told Delta about the events of the sexual assault but that, when T.A.L. had
trouble telling Delta the details of the assault, Delta called Gomez and T.A.L.
told Gomez some additional details. 
However, Detective Therwanger testified that, because she had not
interviewed Delta, she did not know exactly what T.A.L. told Delta before
T.A.L. talked with Gomez.  The record
indicates a conclusion by the trial court that Delta was the proper outcry
witness, although the trial court did not expressly rule on appellant=s motion for mistrial.  The trial court indicated that, if later
evidence showed Delta was not the proper outcry witness, the trial court would
take action at that time.

The record supports the trial court=s conclusion that Delta was the proper
outcry witness.  T.A.L. testified that
she first told a twelve-year-old friend about what appellant had done to her
and then told Delta about it.  Delta
testified that she was the first person over the age of eighteen, other than
the defendant, to whom T.A.L. made a statement about the sexual assault.  Delta said that T.A.L. told her the
following:  that appellant used to take
her into the bedroom and make her rub lotion on his penis; that appellant later
started putting his penis in her mouth; and that, after T.A.L. turned nine
years old, appellant had sexual intercourse with her.  Delta also said that T.A.L. told her that
appellant had put his penis inside her private. 
Based on this testimony, the trial court could have reasonably concluded
that Delta was the first person, eighteen years of age or older, other than the
defendant, to whom the child victim made a statement about the offense in some
discernible manner.  Therefore, the trial
court did not abuse its discretion in permitting Delta to testify as the outcry
witness.

Additionally, appellant waived his first
issue.  To preserve error for appellate
review, the complaining party must make a timely, specific objection in the
trial court and obtain a ruling on the objection.  Tex. R.
App. P. 33.1(a); Wilson v.
State, 71 S.W.3d 346, 349 (Tex.
Crim. App. 2002); Broxton v. State, 909 S.W.2d 912, 918 (Tex. Crim. App.
1995).  Appellant did not object to Delta=s outcry testimony until after Delta
testified.  Because appellant failed to
make a timely objection to Delta=s
outcry testimony, appellant waived the error he now asserts on appeal.  See Tex.
R. App. P. 33.1; see also Mulder v. State, 707 SW.2d 908, 913
(Tex. Crim. App. 1986).  Therefore,
appellant failed to preserve his complaint for review.  We overrule appellant=s
first point of error. 

                                                        Sufficiency
of the Evidence








In his second point, appellant challenges the
legal and factual sufficiency of the evidence. 
In order to determine if the evidence is legally sufficient, we must
review all of the evidence in the light most favorable to the verdict and determine
whether any rational trier of fact could have found the essential elements of
the crime beyond a reasonable doubt.  Jackson
v. Virginia, 443 U.S. 307 (1979); Jackson
v. State, 17 S.W.3d 664 (Tex.
Crim. App. 2000).  To determine if the
evidence is factually sufficient, the appellate court reviews all of the
evidence in a neutral light.  Watson
v. State, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006) (overruling in part Zuniga
v. State, 144 S.W.3d 477 (Tex. Crim. App. 2004)); Johnson v. State,
23 S.W.3d 1, 10-11 (Tex. Crim. App. 2000); Cain v. State, 958 S.W.2d
404, 407-08 (Tex. Crim. App. 1997); Clewis v. State, 922 S.W.2d 126, 129
(Tex. Crim. App. 1996).  Then, the
reviewing court determines whether the evidence supporting the verdict is so
weak that the verdict is clearly wrong and manifestly unjust or whether the
verdict is against the great weight and preponderance of the conflicting
evidence.  Watson, 204 S.W.3d at
414-15; Johnson, 23 S.W.3d at 10-11. 
The jury, as the trier of fact, is the sole judge of the credibility of
the witnesses and of the weight to be given to their testimony.  Tex.
Code Crim. Proc. Ann. art. 36.13 (Vernon 2007), art. 38.04 (Vernon 1979).

T.A.L. testified that, when she was in
kindergarten, appellant made her rub lotion on his front private part.  The prosecutor asked T.A.L. whether appellant=s front private was his penis, and
T.A.L. responded that it was.  T.A.L.
said that appellant told her to rub his penis back and forth.  She said that appellant made her rub lotion
on him three or four times a week throughout her kindergarten year and the
summer before her first grade year. 
T.A.L. also said that her mother, Delta, was at work or away from home
when appellant made her rub lotion on him.

T.A.L. further testified that, during the summer
before her first grade year, appellant started making her put his penis in her
mouth.  She said that appellant showed
her a picture of Aa girl
with her mouth on another person=s
private.@  T.A.L. testified that, two days later,
appellant made her put her mouth on his penis. 
She said that appellant required her to perform this act two to four
times a week throughout her first grade year and into the middle of the summer
before her second grade year. T.A.L. said that, when appellant=s penis was in her mouth, appellant
would move her head up and down with his hand.








T.A.L. testified that, right before her third
grade year started, appellant made her take off her clothes, appellant took off
his clothes, and appellant put his penis in her private.  T.A.L. testified that it hurt when appellant
put his penis in her private.  She said
that she was scared and crying.  She
described in detail what appellant did to her. 
T.A.L. further testified that this conduct went on throughout her third
grade year in 2002 and 2003.  T.A.L. said
that she did not tell anybody what appellant was doing to her because she was
scared that appellant might hurt her or her mother.  T.A.L. said that she moved to Missouri at the end of
her third grade year.

Dr. Martha Irene Rucker Walsh, a pediatrician in Missouri, examined
T.A.L. on January 31, 2005.  Dr. Walsh
testified that T.A.L. had a normal genital exam.  Thus, Dr. Walsh said that there were no
physical findings or test results establishing that T.A.L.=s vagina had been penetrated.  However, Dr. Walsh also said that it was not
uncommon for children who have been through episodes of sexual abuse to have
normal genital exams.  She said that
there can be an injury to the genital area that heals completely.  Dr. Walsh further testified that, the longer
the period between the last sexual contact or genital injury and the
examination, the more likely the injury will be completely healed.  She further said that probably more than
ninety percent of sexual assault examinations of female children come out
normal.

Armstead conducted the sexual assault examination
of T.A.L. in Midland
on December 12, 2005.  Armstead testified
that her examination revealed jagged, irregular edges on the left side of
T.A.L.=s
hymen.  She explained that tearing of the
hymen by penetration results in irregular edges to the hymen.  She said that her findings of irregular edges
of T.A.L.=s hymen
supported T.A.L.=s outcry
of sexual assault.








Applying the above standards of review, the
evidence was both legally and factually sufficient to support appellant=s conviction for aggravated sexual
assault of a child.  Appellant contends
that no medical evidence conclusively established that he sexually assaulted
T.A.L.  However, medical evidence is not
necessary for a conviction.  The
testimony of a child victim alone is sufficient to support a conviction for
aggravated sexual assault.  Tex. Code Crim. Proc. Ann. art.
38.07(a) (Vernon 2005); Tear v. State, 74 S.W.3d 555, 560 (Tex. App.CDallas 2002, pet. ref=d); Empty v. State, 972 S.W.2d
194, 196 (Tex. App.CDallas
1998, pet. ref=d); Ruiz
v. State, 891 S.W.2d 302, 304 (Tex. App.CSan
Antonio 1994, pet. ref=d).  T.A.L. testified that appellant put his penis
in her private.  T.A.L. described in
detail what appellant did to her.  She
also said that appellant engaged in this conduct throughout her third grade
year.  Additionally, Armstead testified
that her findings supported T.A.L.=s
sexual assault outcry.  The evidence
supports a finding that appellant penetrated T.A.L.=s
sexual organ with his penis.  We overrule
appellant=s second
point of error.  

                                                       Prior
Inconsistent Statement

In his third point, appellant complains that the
trial court erred in preventing him from impeaching Delta with a prior
inconsistent statement.  The State
introduced into evidence copies of T.A.L.=s
medical records from a hospital in Missouri.  The medical records indicated that Delta
denied having a history of substance abuse. 
Appellant sought to introduce evidence that Delta had possessed
marihuana in the past in an attempt to establish that Delta=s statement in the medical records was
a lie.  The trial court excluded the
evidence of past marihuana possession. 
Appellant also sought to ask Delta whether she had lied to the hospital
personnel.  The trial court did not allow
the question.

Appellant presented a bill of proof.  During the bill of proof, Delta admitted that
her statement to the hospital personnel denying a history of drug abuse was a
lie.  Delta testified that she lied to
the hospital personnel because she did not believe her past was any of their
business.  On appeal, appellant contends
that the trial court should have allowed him to prove that Delta lied to the
hospital personnel.

We review a trial court=s
admission or exclusion of evidence for an abuse of discretion.  Burden v. State, 55 S.W.3d 608, 615 (Tex. Crim. App. 2001); Green
v. State, 934 S.W.2d 92, 101-02 (Tex. Crim. App. 1996).  Rule 613(a) of the Texas Rules of Evidence
permits a party to impeach a witness with a prior inconsistent statement.  Tex.
R. Evid. 613(a); Lopez v. State, 86 S.W.3d 228, 230 (Tex. Crim. App.
2002).  To be admissible under Rule
613(a), the prior statement must be inconsistent with the statement given at
trial.  Lopez, 86 S.W.3d at 230; Madry
v. State, 200 S.W.3d 766, 769 (Tex. App.CHouston
[14th Dist.] 2006, pet. ref=d).








At trial, appellant=s
counsel acknowledged that he was using Delta=s
prior statement as Asimply
impeachment@ as
opposed to using it as a prior inconsistent statement.  Appellant=s
counsel did not attempt to impeach any of Delta=s
trial testimony with her prior statement to the hospital personnel.  For example, appellant=s
counsel did not ask Delta, either during her testimony in the presence of the
jury or during the bill of proof, whether she had a history of substance
abuse.  Thus, appellant did not show that
the prior statement was inconsistent with anything Delta testified to at
trial.  Instead, appellant merely
attempted to show that the prior statement was a lie.  First, appellant offered evidence that Delta
had possessed marihuana in the past in an attempt to establish that Delta=s statement in the medical records was
a lie.  The trial court correctly
excluded evidence regarding Delta=s
possession of marihuana because evidence of specific instances of conduct is
inadmissible for the purpose of attacking a witness=s
credibility.  Tex. R. Evid. 608(b); see Crenshaw v. State, 125
S.W.3d 651, 654 (Tex. App.CHouston
[1st Dist.] 2003, pet. ref=d).  Second, appellant=s
counsel wanted to ask Delta in the presence of the jury whether or not she lied
to the hospital personnel.  The trial
court correctly disallowed the question because evidence that Delta lied to the
hospital personnel also constituted evidence of a specific instance of
conduct.  As such, the evidence was
inadmissible for the purpose of attacking Delta=s
credibility.  Rule 608(b).                                    Appellant sought to use Delta=s prior statement to the hospital
personnel as a means of introducing evidence of specific instances of
conduct.  That evidence was inadmissible
under Rule 608(b).  Therefore, the trial
court did not abuse its discretion in excluding the evidence.

Moreover, even if the trial court committed error
in disallowing impeachment of Delta with the prior statement, the record does
not demonstrate that appellant suffered harm from the error.  Generally, a violation of the evidentiary
rules that results in the erroneous admission or exclusion of evidence is
nonconstitutional error.  See Potier
v. State, 68 S.W.3d 657, 663 (Tex. Crim. App. 2002) (AErroneous evidentiary rulings rarely
rise to the level of denying the fundamental constitutional rights.@); King v. State, 953 S.W.2d
266, 271 (Tex. Crim. App. 1997); Stovall v. State, 140 S.W.3d 712, 718
(Tex. App.CTyler
2004, no pet.).  We disregard a
nonconstitutional error if it does not affect an appellant=s substantial rights.  Tex.
R. App. P. 44.2(b).  A substantial
right is affected when the error had a substantial and injurious effect or
influence on the jury=s
verdict.  Solomon v. State, 49
S.W.3d 356, 365 (Tex.
Crim. App. 2001); King, 953 S.W.2d at 271.  A criminal conviction should not be
overturned for nonconstitutional error if the appellate court, after examining
the record as a whole, has fair assurance that the error did not influence the
jury, or had but slight effect.  Johnson
v. State, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).








The record shows that appellant=s counsel attacked Delta=s credibility throughout an extensive
cross-examination.  The record also shows
that the State=s case
did not depend on Delta=s
testimony or her credibility.  Rather,
the case depended on T.A.L.=s
testimony.  Having examined the record as
a whole, we conclude that the trial court=s
error, if any, in preventing appellant from impeaching Delta=s credibility with the prior statement
did not harm appellant under the nonconstitutional error standard.  We overrule appellant=s
third point of error.     

Jury Argument

In his fourth, fifth, and sixth points, appellant
complains that the State made improper comments during jury arguments in the
guilt/innocence phase and in the punishment phase.  However, appellant did not object to the
complained-of comments during trial. 
When a defendant fails to object to jury argument, he forfeits his right
to raise the issue on appeal.  Threadgill
v. State, 146 S.W.3d 654, 670 (Tex. Crim. App. 2004); Cockrell v. State,
933 S.W.2d 73, 89 (Tex. Crim. App. 1996); Moreno v. State, 195 S.W.3d
321, 328-29 (Tex. App.CHouston
[14th Dist.] 2006, pet. ref=d).  Therefore, appellant waived any error in the
State=s jury
arguments.  We overrule appellant=s fourth, fifth, and sixth points of
error.

                                                               This
Court=s Ruling

We affirm the judgment of the trial court.

 

 

TERRY McCALL

JUSTICE

 

June 7,
2007

Do not
publish.  See Tex. R. App. P. 47.2(b).

Panel consists of:  Wright, C.J.,

McCall, J., and Strange,
J.